UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
Eastern Division

MAY 2 2 2003

| | | |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 03 C 2528 |
| | ) | |
| | ) | Judge James B. Zagel |
| | ) | |
| UPM-KYMMENE OYJ, *et al.*, | ) | Magistrate Judge Michael T. Mason |
| | ) | |
| Defendants. | ) | |

MAY 2 2 2003

### NOTICE OF MOTION

TO:  Carla Stern                             Claude F. Scott, Jr.
     Trial Attorney                          Trial Attorney
     U.S. Department of Justice              U.S. Department of Justice
     Antitrust Division                      Antitrust Division
     209 South LaSalle Street, Suite 600     Litigation I Section
     Chicago, IL 60604                        1401 H Street, Suite 4000
                                              Washington, DC 20530

On May 13, 2003, at 10:15 a.m. or as soon thereafter as counsel may be heard, the undersigned shall appear before the Honorable James B. Zagel in the courtroom usually occupied by him in Room 2503 of the United States District Court for the Northern District of Illinois, Eastern Division, and then and there present **Defendants' Motion for a Protective Order to Vacate the Government's Rule 30(b)(6) Deposition Notices of UPM and Bemis and the Deposition Notice of Jeffrey Curler,** a copy of which is herewith served upon each of you.

42

Dated: May 9, 2003

Respectfully submitted,

**WHITE & CASE LLP**

By: _Christopher M. Curran /DC_

    Christopher M. Curran
    M. Elaine Johnston
    Martin M. Toto
    Matthew S. Wild
    601 Thirteenth Street, N.W.
    Washington, D.C. 20005-3807
    Telephone: (202) 626-3600
    Facsimile: (202) 639-9355

    Alan S. Madans
    Daniel Cummings
    Rothschild, Barry & Myers
    55 W. Monroe Street, Suite 3900
    Chicago, IL 60603-5012
    Telephone: (312) 372-2345
    Facsimile: (312) 372-2350

*Attorneys for UPM-Kymmene Oyj*
*and Raflatac, Inc.*

    Thomas A. Doyle
    Baker & McKenzie
    One Prudential Plaza
    130 East Randolph Drive
    Chicago, IL 60601
    Telephone: (312) 861-8866

    and

    John D. French
    Richard A. Duncan
    Julie Potts Close
    Faegre & Benson LLP
    2200 Wells Fargo Center
    90 South Seventh Street
    Minneapolis, MN 55402-3901
    Telephone: (612) 766-7000

*Attorneys for Bemis Company, Inc.*
*and Morgan Adhesives Company*

-2-

## PROOF OF SERVICE BY FACSIMILE AND HAND DELIVERY

The undersigned attorney certifies that a copy of the foregoing Notice of Motion and Defendants' Motion for a Protective Order to Vacate the Government's Rule 30(b)(6) Deposition Notices of UPM and Bemis and the Deposition Notice of Jeffrey Curler were served upon the following:

**(Via facsimile - 312.353.1046) and by Hand Delivery**
Carla Stern
Trial Attorney
U.S. Department of Justice
Antitrust Division
209 S. LaSalle St., Suite 600
Chicago, IL 60604

**(Via facsimile - 202.305.0673) and by Hand Delivery**
Claude F. Scott, Jr.
Trial Attorney
U.S. Department of Justice
Antitrust Division
Litigation 1 Section
1401 H Street, Suite 4000
Washington, DC 20530

**(Via facsimile - 612-766-1600) and by U.S. Mail**
John D. French
Richard A. Duncan
Faegre & Benson LLP
2200 Wells Fargo Center
90 S. Seventh St.
Minneapolis, MN 55402

before the hour of 4:00 p.m. on May 9, 2003.

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
Eastern Division

|  |  |  |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | MAY 2 2 2003 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 03 C 2528 |
| | ) | |
| | ) | Judge James B. Zagel |
| | ) | |
| UPM-KYMMENE OYJ, *et al.*, | ) | Magistrate Judge Michael T. Mason |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION FOR A PROTECTIVE ORDER TO VACATE THE GOVERNMENT'S RULE 30(b)(6) DEPOSITION NOTICES OF UPM AND BEMIS AND THE DEPOSITION NOTICE OF JEFFREY CURLER

Defendants move, pursuant to Rule 26 of the Federal Rules of Civil Procedure, for an order to block the Government from taking duplicative and cumulative depositions. In support of their motion, Defendants state:

During its seven-month pre-complaint *ex parte* investigation, the Government conducted unfettered nationwide discovery pursuant to the Hart-Scott-Rodino Antitrust Improvements Act. During that process, the Government took the depositions of Jouko Lahepelto, Vice President and Area Director of Raflatac Group, individually and as UPM's corporate designee, and Daniel O'Connell, President of Raflatac, Inc. These depositions lasted for ten hours and twelve hours, respectively, and were voluntarily concluded by the Government. During the Government's investigation, UPM also voluntarily produced Penti Kallio, Chairman and Chief Executive Officer of Raflatac Group, for a deposition as part of UPM's efforts to resolve this matter during the pre-merger investigation without the need for litigation. UPM will also be producing Juhä

Niemelä, Chief Executive Officer of UPM, Phillip Coates, National Sales Manager of Raflatac, Inc., and Brenda Simpson, Territory Sales Manager of Raflatac, Inc., for depositions within the next two weeks. In addition, UPM has provided the Government with answers to numerous interrogatories in its Response to Request for Additional Information and Documentary Material, dated January 4, 2003, as well as approximately 100,000 pages of documents.

During its investigation, the Government also took the depositions of Jeffrey Curler, Chief Executive Officer of Morgan Adhesives Company, individually and as a corporate designee, William F. Austen, President of Morgan Adhesives Company, Barry Madel, Vice President of Sales and Marketing for the Printing Product Division of Morgan Adhesives Company, and Roger Curtis Clark, Vice President of Operations of Morgan Adhesives Company, individually and as a corporate designee. Each of these depositions were lengthy – Curler's deposition lasted one day; Austen's deposition lasted three days; Madel's deposition lasted one day; and Clark's deposition lasted one day. Bemis has also provided the Government with answers to numerous interrogatories in its Response to Request for Additional Information and Documentary Material, as well as the equivalent of approximately 1,500,000 pages of documents in electronic form.

Nonetheless, the Government has served Defendants with Rule 30(b)(6) deposition notices. The Government has served these Rule 30(b)(6) deposition notices even though the Government will have deposed every single knowledgeable employee of the Defendants. The Government has also served a deposition notice on Jeffrey Curler, despite having previously deposed him for a day. As shown below, the Government's Rule 30(b)(6) deposition notices should be vacated. The Government's deposition notice of Mr. Curler should also be vacated.

A Rule 30(b)(6) deposition is designed to be an early discovery tool "of an examining party ignorant of who in the corporation has knowledge." Advisory Committee Notes. As noted above, the Government has taken or will have taken the depositions of all of Defendants' knowledgeable officers and employees. Many of these depositions lasted for more than a day, and each of them was concluded voluntarily by the Government. The transcripts of each of these depositions total hundreds of pages. As noted in Defendants' objections to the Government's Rule 30(b)(6) deposition notices, the Government's Rule 30(b)(6) deposition notices are unnecessary, duplicative and cumulative of discovery previously provided by the Defendants, a misuse of Rule 30(b)(6) and intended to harass Defendants. (*See* UPM's Objections To The Government's Rule 30(b)(6) Deposition Notice and Letter of The Government's Rule 30(b)(6) from John French, Esq. to Michael Bishop, Esq., dated May 2, 2003) (collectively attached at Tab A).

*Novartis Pharmaceuticals Corp. v. Abbott Laboratories*, 203 F.R.D. 159 (D. Del. 2001), squarely forecloses the Government's tactic here. In *Novartis*, plaintiff sought a Rule 30(b)(6) deposition after it had deposed the defendant's employee who was most knowledgeable. The court granted a protective order, holding:

> The Court finds that Dr. Norton is the most knowledgeable witness in the subject area and would have been the designee for a 30(b)(6) deposition. Novartis has obtained over eighty pages of testimony and the Court concludes that another deposition of Dr. Norton would be cumulative to the testimony already procured.

*Id.* at 163. Similarly, in *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 192 (1st Cir. 2001), the First Circuit affirmed the district court's refusal to allow two Rule 30(b)(6) depositions of the same corporation. The First Circuit also affirmed the district court's refusal to allow defendant to take three depositions that were cumulative of testimony that two

other deponents from the same company provided. *Id.* at 193. It is particularly appropriate to protect high ranking officers, such as Mr. Curler or the officers who would be required to testify for a second time pursuant to the Government's Rule 30(b)(6) deposition notices, from duplicative and cumulative discovery. Indeed, "permitting unfettered discovery of corporate executives would threaten disruption of their business and could serve as a potent tool for harassment in litigation." *Consolidated Rail Corp. v. Primary Industries, Corp.*, Nos. 92 Civ. 4927, 92 Civ. 6313, 1993 WL 364471 at *1 (S.D.N.Y. Sept. 10, 1993).

Here, the Government has obtained extensive deposition testimony, and its noticed Rule 30(b)(6) depositions would be duplicative and cumulative of the depositions that it has previously taken. Accordingly, the Court should not subject Defendants' high ranking executives to such harassment.

Furthermore, the Government's Rule 30(b)(6) deposition notices actually constitute contention interrogatories and are a thinly veiled attempt to circumvent the Case Management Order's prohibition on interrogatories.[1] It is apparent from the topics in the Government's Rule 30(b)(6) deposition notice to UPM that the Government seeks testimony that is properly the subject of contentions interrogatories – *e.g.*, topic 1: "[t]he factual support for the following contentions included in the white papers submitted to the United States during investigation;" topic 2: "[t]he nature and value of any efficiencies . . . that the company asserts will result from the proposed acquisition of MACtac . . .;" and topic 3: "[t]he nature and monetary value of UPM's relationship with Avery Dennison, Inc. relating to the sale of label papers . . . ." The same is true for the Government's Rule 30(b)(6) deposition notice to Bemis.

---

[1] If the Government may take the Rule 30(b)(6) depositions noticed here, Defendants would be entitled to – and would seek – a Rule 30(b)(6) deposition of the key contentions in the Complaint.

Courts have granted protective orders vacating Rule 30(b)(6) depositions notices, which were in the nature of contention interrogatories, and held that the use of contention interrogatories was more appropriate. *See, e.g., McCormick-Morgan, Inc. v. Teledyne Industries, Inc.,* 134 F.R.D. 275, 287 (N.D. Cal. 1991) (granting protective order vacating Rule 30(b)(6) deposition because contention interrogatories were more appropriate), *rev'd on other grounds,* 765 F. Supp 611 (N.D. Cal. 1991); *Exxon Research and Engineering Co. v. United States,* 44 Fed.Cl. 597, 602 (Ct. Cl. 1999) (same).

Here, the Government seeks to use these Rule 30(b)(6) depositions as a means of obtaining information that would be more appropriately gathered by contention interrogatories. The Government, however, waived its right to propound interrogatories pursuant to the Case Management Order. The Court should not allow the Government to circumvent the Case Management Order by disguising contention interrogatories as Rule 30(b)(6) depositions.

The Government has drawn an artificial distinction between its seven-month investigation with unfettered *ex parte* discovery and this litigation, relying upon *SEC v. Saul,* 133 F.R.D. 115 (N.D. Ill. 1990). The holding in that case, however, has *never* been applied in a Hart-Scott-Rodino Act merger case, where the Government's pre-merger investigation is by statute for the specific purpose of allowing the Government to litigate a merger case "as soon as may be." 15 U.S.C. § 25. While the Government has asserted that investigative depositions serve different purposes than litigation depositions, that generalization – which certainly applies in ponderous and wide-ranging investigations – most assuredly does not apply in the Hart-Scott-Rodino Act context, where the sole purpose is preparing for accelerated litigation on the probable competitive effects of the proposed merger.

Moreover, the Government's investigative depositions here were plainly litigation-type depositions. The Government did not seek objective, factual information about the industry and competitive landscape, as is common in merger investigations. Rather, the depositions were comprised almost entirely of leading, aggressive questions designed to build a case. The depositions were even videotaped for use in court.

Pursuant to Local Rule 37.2, M. Elaine Johnston, Esq., counsel for UPM and Raflatac, had telephone conferences on May 7 and 8, 2003 with Steven Kramer, Esq., counsel for the Government, to resolve the issues raised by the Government's Rule 30(b)(6) deposition notice of UPM, but was unable to reach an accord. Counsel for Bemis also had communications with the Government's counsel about issues raised in this motion relative to the Government's Rule 30(b)(6) deposition notice of Bemis and deposition notice of Mr. Curler, but was unable to reach an accord.

## CONCLUSION

For the reasons stated above, Defendants' motion for a protective order should be granted. The Court should vacate the Government's Rule 30(b)(6) deposition notices of UPM and Bemis and the Government's deposition notice of Jeffrey Curler.

Dated: May 9, 2003

Respectfully submitted,

WHITE & CASE LLP

By: _Christopher M. Curran/tc_

    Christopher M. Curran
    M. Elaine Johnston
    Martin M. Toto
    Matthew S. Wild
    601 Thirteenth Street, N.W.
    Washington, D.C. 20005-3807
    Telephone: (202) 626-3600
    Facsimile: (202) 639-9355

    Alan S. Madans
    Daniel Cummings
    Rothschild, Barry & Myers
    55 W. Monroe Street, Suite 3900
    Chicago, IL 60603-5012
    Telephone: (312) 372-2345
    Facsimile: (312) 372-2350

*Attorneys for UPM-Kymmene Oyj*
  *and Raflatac, Inc.*

    Thomas A. Doyle
    Baker & McKenzie
    One Prudential Plaza
    130 East Randolph Drive
    Chicago, IL 60601
    Telephone: (312) 861-8866

    and

    John D. French
    Richard A. Duncan
    Julie Potts Close
    Faegre & Benson LLP
    2200 Wells Fargo Center
    90 South Seventh Street
    Minneapolis, MN 55402-3901
    Telephone: (612) 766-7000

*Attorneys for Bemis Company, Inc.*
  *and Morgan Adhesives Company*

-7-

# TAB A

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
Eastern Division

|  |  |  |
|---|---|---|
| UNITED STATES,<br><br>Plaintiff,<br><br>v.<br><br>UPM-KYMMENE OYJ, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 03 C 2528<br><br>Judge James B. Zagel<br><br>Magistrate Judge Michael T. Mason |

## UPM'S OBJECTIONS TO THE GOVERNMENT'S
## NOTICE OF RULE 30(B)(6) DEPOSITION

UPM hereby responds and objects to the Government's Notice of a Rule 30(b)(6) Deposition, dated April 28, 2003, as follows:

### GENERAL OBJECTIONS

During its investigation, the Government has taken the depositions of Jouko Lahepelto, Vice President and Area Director of Raflatac Group, individually and as UPM's corporate designee, and Daniel O'Connell, President of Raflatac, Inc. These depositions lasted for ten hours and twelve hours, respectively. During the Government's investigation, UPM also voluntarily produced Pentit Kallio, Chairman and Chief Executive Officer of Raflatac Group, for a deposition as part of UPM's efforts to resolve this matter short of litigation. UPM also intends to produce Juha Niemela, Chairman and Chief Executive Officer of UPM, and Phillip Coates, National Sales Manager of Raflatac, Inc., for depositions within the next two weeks. In addition,

UPM has provided the Government with answers to numerous interrogatories in its Response to Request for Additional Information and Documentary Material, dated January 4, 2003.

Nonetheless, the Government has served UPM with a Rule 30(b)(6) deposition notice. The Government's Rule 30(b)(6) deposition notice actually constitutes contention interrogatories and is a thinly veiled attempt to circumvent the Case Management Order's prohibition on interrogatories.[1] Furthermore, a Rule 30(b)(6) deposition is designed to be an early discovery tool "of an examining party ignorant of who in the corporation has knowledge." Advisory Committee Notes. As noted above, the Government has taken or will have taken the depositions of all knowledgeable officers in UPM and its subsidiaries. The Government's Rule 30(b)(6) deposition notice is duplicative and cumulative of previous discovery provided by UPM, a misuse of Rule 30(b)(6) and intended to harass UPM.

Deposition Topic No. 1

The factual support for the following contentions included in the white papers submitted to the United States during investigation:

A.      "a narrow paper only PSL product market definition would ignore significant demand side substitution" (Mar. 27, 2003 White Paper at 6).

B.      "Actual Substitution between PSL and non-PSL is frequent." (Mar. 27, 2003 White Paper at 9).

C.      "there have been communications from Avery that discuss label papers pricing and Avery's demands to get the best price or the price UPM charges to Raflatac." (Mar. 27 White Paper at 47).

---

[1] If the Government may take a Rule 30(b)(6) deposition as noticed here, Defendants would be entitled to – and would seek – a Rule 30(b)(6) deposition of the key contentions in the Complaint.

     D.    "Raflatac and MACtac anticipate that they will benefit significantly from the merger by offering a significantly greater number of products on a trimless and splice free basis." (Mar. 27 White Paper at 57).

Objections to Deposition Topic No. 1

UPM objects to this topic because it calls for testimony protected by the attorney-client privilege and the attorney work product doctrine. The referenced white paper was a voluntary submission constituting part of UPM's counsel's efforts to resolve the Government's pre-merger investigation without litigation. The "factual support" for the statements in the white paper necessarily implicates privilege and work product.

Deposition Topic No. 2

The nature and value of any efficiencies (including but not limited to cost savings, new product introductions and service or product improvements) that the company asserts will result from the proposed acquisition of MACtac.

Objections to Deposition Topic No. 2

UPM objects to this topic because it is duplicative and cumulative of previous government requests, a misuse of Rule 30(b)(6) and intended to harass UPM. UPM has previously provided responsive information through prior deposition testimony and interrogatory responses.

UPM provided deposition testimony on this topic through its corporate designee, Jouko Lahepelto, (See Deposition of UPM ("UPM Tr."), at 114-133) and Daniel O'Connell, President of Raflatac, Inc. (See Deposition of Daniel O'Connell ("O'Connell Tr."), at 340-342 & 346).

UPM has also provided information responsive to this topic in Specification 14(c) of its Response to Request for Additional Information and Documentary Material, dated January 4, 2003.

Deposition Topic No. 3

The nature and monetary value of UPM's relationship with Avery Dennison, Inc. relating to the sale of label papers that are used in making pressure sensitive labelstock (such as face material, release material and siliconized liners) including the profit margin of those sales and UPM's sales to Avery-Dennison, including the profits earned by UPM on its sales of label papers for the years 2000-2002.

Objections to Deposition Topic No. 3

Defendant UPM objects to this topic because it is duplicative and cumulative of previous government requests, a misuse of Rule 30(b)(6) and intended to harass UPM. UPM has previously provided information responsive to this topic.

UPM provided deposition testimony on this topic (See UPM Tr. at 63-66, 368-378 and 441-443). Additionally, Mr. O'Connell also provided deposition testimony on this topic. (See O'Connell Tr. at 391-394).

UPM has also provided information responsive to this topic in Specifications 20(b) and (c) of its Response to Request for Additional Information and Documentary Material, dated January 4, 2003.

Deposition Topic No. 4

The identity and plans of any manufacturer or seller of labelstock to manufacture and/or sell labelstock in the United States.

Objections to Deposition Topic No. 4

Defendant UPM objects to this topic because it is duplicative and cumulative of previous government requests, a misuse of Rule 30(b)(6) and intended to harass UPM. UPM provided information responsive to this topic in Specification 9 of its Response to Request for Additional Information and Documentary Material, dated January 4, 2003.

Deposition Topic No. 5

UPM's direct discussions with Avery and internal strategic considerations regarding Avery's right to receive the same or better pricing in label papers (i.e., materials used in the production of labelstock) than UPM's Raflatac's (sic) subsidiary and Avery's right to demand an audit to verify prices at which UPM is selling label papers to UPM's Raflatac subsidiary.

Objections to Deposition Topic No. 5

Defendant UPM objects to this topic because it is duplicative and cumulative of previous government requests, a misuse of Rule 30(b)(6) and intended to harass UPM. UPM has provided information responsive to this request.

UPM provided deposition testimony on this topic. (See UPM Tr., pp. 368:07-378:16, 467:07-470:14). Mr. O'Connell also provided testimony on this topic. (See O'Connell Tr. at 391-395).

Deposition Topic No. 6

UPM's knowledge about all instances where anyone has switched from using any type of paper pressure sensitive labels to another type of paper pressure sensitive labels, film pressure

sensitive labels, or any other means of labeling or conveying information as a result of a change in the price of VIP or bulk prime paper pressure sensitive labels.

Objections to Deposition Topic No. 6

Defendant UPM objects to this topic because it is duplicative and cumulative of previous government requests, a misuse of Rule 30(b)(6) and intended to harass UPM. The Government had ample opportunity to ask questions on this topic during the depositions of UPM and Mr. O'Connell.

Deposition Topic No. 7

UPM's pricing plans or strategies, including its pricing plans or strategies if the acquisition is consummated, and its pricing plans or strategies in light of price increases announced by other labelstock manufacturers for film-based products.

Objections to Deposition Topic No. 7

Defendant UPM objects to this topic because it is duplicative and cumulative of previous government requests, a misuse of Rule 30(b)(6) and intended to harass UPM. UPM has provided information responsive to this topic.

UPM's corporate designee provided deposition testimony on this topic. (See UPM Tr. at 30-35, 42-60, 66-71, 75-76, 78-82, 89-101, 103-105, 110-111, 139-142, 152-162, 183-184, 186-194, 197-199, 286-289, 294-305, 320-327, 332-334, 335-340, and 485-487).

Mr. O'Connell also provided deposition testimony on this topic. (See O'Connell Tr. at 72-89, 92, 146-149, 163-168, 176-177, 266-268, 282, 283-291, 292-295, 327-331, 335-336, 342-346, 352-354, and 364-368).

UPM has also provided its strategic plans in Specification 6 of its Response to Request for Additional Information and Documentary Material, dated January 4, 2003. Further, UPM

also provided its pricing plans, forecasts and strategies in response to Specification 8 of its Response to Request for Additional Information and Documentary Material.

Deposition Topic No. 8

UPM's business plans if the transaction is either preliminarily or permanently enjoined.

Objections to Deposition Topic No. 8

UPM objects to this topic because it is duplicative and cumulative of previous government requests, a misuse of Rule 30(b)(6) and intended to harass UPM. UPM has provided information responsive to this topic.

UPM has provided information responsive to this topic in Specification 9 of its Response to Request for Additional Information and Documentary Material, dated January 4, 2003. UPM has also provided deposition testimony on this topic. (See UPM Tr. at 111-114 and 547-548).

Deposition Topic No. 9

Communications between UPM and other labelstock manufacturers since January 1, 1999 regarding market pricing for labelstock.

Objections to Deposition Topic No. 9

Defendant UPM objects to this topic because it is duplicative and cumulative of previous government requests, a misuse of Rule 30(b)(6) and intended to harass UPM. The Government had ample opportunity to ask questions on this topic during the depositions of UPM and Mr. O'Connell.

Deposition Topic No. 10

The search and production of documents in response to the Plaintiff United States First Request for Production of Documents from Defendant UPM-Kymmene Oyj.

Objections to Deposition Topic No. 10

UPM has not produced any documents in response to the Plaintiff United States First Request for Production of Documents from Defendant UPM-Kymmene Oyj because all of the requests were improper and objectionable.

Dated: May 6, 2003

WHITE & CASE LLP

By: _____

Christopher M. Curran
M. Elaine Johnston
Martin M. Toto
Matthew S. Wild
601 Thirteenth Street, N.W.
Washington, D.C. 20005-3807
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

Alan S. Madans
Daniel Cummings
Rothschild, Barry & Myers
55 W. Monroe Street, Suite 3900
Chicago, IL 60603-5012
Telephone: (312) 372-2345
Facsimile: (312) 372-2350

*Attorneys for UPM-Kymmene Oyj*
*and Raflatac, Inc.*

# FAEGRE & BENSON LLP

2200 WELLS FARGO CENTER, 90 SOUTH SEVENTH STREET
MINNEAPOLIS, MINNESOTA 55402-3901
TELEPHONE 612.766.7000
FACSIMILE 612.766.1600

JOHN D. FRENCH
jfrench@faegre.com
612.766.7111

May 2, 2003

Michael Bishop                                    **VIA FACSIMILE**
U.S. Department of Justice                        (202) 307-5802
Antitrust Division
Litigation I Section
1401 H Street, NW, Suite 4000
Washington, D.C. 20503

Re:     United States v. UPM-Kymmene, Oyj

Dear Mr. Bishop,

        We are in receipt of the Rule 30(b)(6) deposition notice your office served on Morgan
Adhesives Company ("MACtac") on April 28, 2003. The government has already deposed
Jeff Curler, Bemis Chief Executive Officer; William Austen, MACtac President; Barry
Madel, MACtac Vice President of Sales and Marketing, Printing Products Division Roll
Label Sales; and R. Curtis Clarke, MACtac Vice President of Operations. The deposition
topics identified in the Rule 30(b)(6) notice would simply duplicate testimony that the
government has acquired, or had the opportunity to acquire, from these four witnesses. As
explained in more detail below, Bemis has already produced witnesses who "have
knowledge of and can testify about" the topics identified in the Rule 30(b)(6) notice.

**1) the nature and value of any efficiencies (including but not limited to cost savings,
new product introductions, and service or product improvements) that the company
anticipates will result from UPM-Kymmene Oyj's proposed acquisition of MACtac**

Mr. Austen was asked about, and testified to, this topic during his deposition. See, e.g.,
Austen Dep. 68:4-74:4, 217:16-232:14. Likewise, Mr. Clarke testified as to how the
acquisition would increase output from MACtac assets. Clark Dep. 178:10-182:16.

*Minnesota   Colorado   Iowa   London   Frankfurt   Shanghai*

**2) requirements for new entry into the production of pressure sensitive labelstock**

Mr. Austen and Mr. Madel were identified in Bemis's Response to the Second Request as the principal people contributing to Bemis's response to Specification 10, which requested information regarding entry into the sale or production of pressure sensitive labelstock. See Response to Specification 19. The government deposed both Mr. Austen and Mr. Madel after Bemis's Response to the Second Request was submitted, and therefore had the opportunity to elicit their testimony about this topic. Mr. Madel was briefly asked about this topic. Madel Dep. 360:13-363:8.

**3) standard manufacturing costs and variable costs for labelstock produced by MACtac in North America**

Bemis produced Mr. Clarke in response to a CID issued by the government requesting a Bemis employee to testify about "[p]lant-specific and coater-specific manufacturing and other operational costs and margins relating to the production of labelstock by Morgan Adhesives Co. (MACtac) in North America" and "[e]ffects of variations in coater widths, line speeds, and any other plant or coater-specific operational differences as may be identified, on labelstock production costs and margins of MACtac and other North American labelstock producers." Clarke Dep., Ex. 1.

Mr. Clarke confirmed that he was the person to speak for Bemis Company regarding manufacturing and operating costs. Clarke Dep. 7:8-13. Mr. Clarke referred the government to Mr. Madel as the best source of information regarding margins (as relates to selling price). Clarke Dep. 7:14-8:10, 63:14-19, 147:15-148:19. Mr. Madel was deposed after Mr. Clarke (see No. 5 below).

The majority of Mr. Clarke's deposition was devoted to testimony about standard manufacturing and variable costs for labelstock produced by MACtac in North America. See, e.g., Clarke Dep. 35:2-118:2, 159:14-163:16, 164:2-20.

**4) MACtac's purchase of label papers used in making pressure sensitive labelstock (such as face material, release material, and siliconized liners) including but not limited to the volume and cost of those purchases separately for face and liner papers for all or any part of the period from January 1, 1996 to the present**

Mr. Clarke was asked about, and testified to, this topic during his deposition. See, e.g., Clarke Dep. 169:13-177:4.

2

**5) MACtac's pricing plans or strategies, including its pricing plans or strategies in light of price increases announced by other labelstock manufacturers for film-based products**

Before Mr. Madel's deposition, Mr. Clarke testified that Mr. Madel was the source for pricing and margin information. See No. 3 above. Mr. Madel was asked about, and testified to, this topic during his deposition. See, e.g., Madel Dep. 49:17-67:5.

**6) MACtac's business plans if the transaction is either preliminarily or permanently enjoined**

Mr. Curler was asked about, and testified to, this topic during his deposition. See, e.g., Curler Dep. 255:21-269:4, 277:10-287:21. Mr. Curler testified that he received two sets of three year plans from MACtac for 2003-2005 -- the first anticipating the company would be sold, and the second filling in the current forecast in the event the company was not sold. Curler Dep. 277:10-284:2. The government had not received a copy of the second plan at the time of Mr. Curler's deposition, so Bemis counsel Richard Duncan submitted this document to the government on February 28, 2003. The second plan is Exhibit 26 of Mr. Austen's deposition, and a topic of his deposition testimony. Austen Dep. 370:1-392:20.

**7) communications between MACtac and other labelstock manufacturers since January 1, 1999 regarding market pricing for labelstock**

Both Mr. Austen and Mr. Madel were asked about, and testified to, this topic during their depositions. See, e.g., Austen Dep. 188:19 -- 189:19, 324:18-21, 330:14-335:14, 512:20-513:19; Madel Dep. 156:15-158:22.

**8) the factual support for the following contentions stated in the White Papers submitted to the Department during its investigation:**

**A. "a narrow paper only PSL product market definition would ignore significant demand side substitution" (Mar. 27, 2003 White Paper at 6)**

Mr. Madel was asked about, and testified to, this topic during his deposition. See, e.g., Madel Dep. 276:3-307:12, 314:20-356:1.

**B. "actual substitution between PSL and non-PSL is frequent." (Mar. 27, 2003 White Paper at 9)**

Mr. Madel was asked about, and testified to, this topic during his deposition. See, e.g., Madel Dep. 276:3-307·12, 314:20-356:1.

3

C.     "Raflatac and MACtac anticipate that they will benefit significantly from the merger by offering a significantly greater number of products on a trimless and splice free basis." (Mar. 27, 2003 White Paper at 57)

Mr. Madel was asked about, and testified to, the competitive advantage to a labelstock supplier of being able to offer trimless and splice free products. Madel Dep. 109:10-113:10.

9)     MACtac's knowledge about all instances where anyone has switched from using any type of paper pressure sensitive labels to another type of paper pressure sensitive labels, film pressure sensitive labels, or any other means of labeling or conveying information as a result of a change in the price of VIP or bulk prime paper pressure sensitive labels

Mr. Madel was asked about, and testified to, this topic during his deposition. See, e.g., Madel Dep. 276:3-307:12, 314:20-356:1.


10)    The search and production of documents in response to the Plaintiff United States First Request for Production of Documents from Bemis Company.

Bemis provided detailed information regarding its document search and production procedures in its Response to the Second Request. See Response to Specification 19.


In summary, the government has already had its opportunity to depose the Bemis and MACtac employees most knowledgeable about the topics identified in the April 28, 2003 Rule 30(b)(6) notice, and has, in fact, done so. Bemis, therefore, has no obligation to provide a 30(b)(6) deponent and it objects to the government's 30(b)(6) deposition notice. See, eg., Novartis Pharmaceuticals Corp. v. Abbott Laboratories, 203 F.R.D. 159 (D. Del. 2001).

Sincerely,

FAEGRE & BENSON LLP

John D. French

cc:    Thomas A. Doyle
       Christopher Curran
       Alan S. Madans
M1:989149.02

4

## FAEGRE & BENSON LLP

2200 WELLS FARGO CENTER, 90 SOUTH SEVENTH STREET
MINNEAPOLIS, MINNESOTA 55402-3901
TELEPHONE 612.766.7000
FACSIMILE 612.766.1600
www.faegre.com

May 5, 2003

Michael Bishop, Esq.                                        **BY TELECOPY**
U.S. Department of Justice, Antitrust Division                (202) 307-5802
City Center Building
1401 H Street, N.W.
Washington, D.C. 20530

Dear Mr. Bishop:

I have your letter of May 2, 2003, and accompanying notice of deposition for
Jeffrey Curler on May 12, 2003. Your letter describes three subjects upon which you intend
to depose Mr. Curler.

As you know, Mr. Curler was deposed extensively (more than 300 pages of
transcript) on February 20, 2003. During that deposition, all of the subjects mentioned in
your May 2, 2003, letter were covered.

Specifically:

1)      MACtac's recent financial performance

        75:15-107:19
        158:8-13
        174:17-175:7
        265:17-270:20
        283:7-284:2
        299:5-13
        304.4-314:1

2)      MACtac's future plans absent approval of the merger

        255:21-270:20
        276:10-287:21
        298:6-303:6

3)      Any statements regarding MACtac's plans and financial future made to
        the investment community

*Minnesota  Colorado  Iowa  London  Frankfurt  Shanghai*

Michael Bishop, Esq.
May 5, 2003
Page 2

182:15-194:11

Accordingly, Bemis Company, Inc., and Mr. Curler object to any further deposition of Mr. Curler. Bemis and Curler adopt the position set forth in footnote 2 of UPM's OPPOSITION TO THE GOVERNMENT'S MOTION TO OBTAIN MORE OVERSEAS DOCUMENTS AND TO FORCE UPM'S CEO TO TRAVEL TO THE UNITED STATES FOR A DEPOSITION, dated May 5, 2003. See, also, Jones v. State Farm Fire & Casualty Co., 129 F.R.D. 170 (N.D.Ind. 1990); Campbell v. American Fabrics Co., 3 F.R.D. 3 (E.D.N.Y. 1943); Welty v. Clute, 1 F.R.D. 446 (W.D.N.Y. 1940).

Sincerely yours,

John D. French

JDF:norda

cc:   Richard A. Duncan, Esq.
      Alan S. Madans, Esq.
      Christopher M. Curran, Esq.

M2:20541396.01